IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| FRANCINE JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 08-4078-JAR-DWB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423(hereinafter the Act).  Finding error as alleged by plaintiff, the court recommends the Commissioner's decision be reversed and the case be remanded for further proceedings consistent with this opinion.

I.   Background

Plaintiff filed an application for DIB on July 1, 2005 alleging disability beginning Feb. 28, 2005.  (R. 14, 61-68).[1]

_____

[1]The Commissioner's "List of Exhibits" is deficient in identifying the exhibits in Sections A, B, and D of the 459-page administrative record.  (R. 1).  The "List of Exhibits" treats each of Sections A, B, and D of the administrative record as but a single exhibit, although those sections consist of many

The application was denied initially and on reconsideration, and plaintiff sought a hearing before an Administrative Law Judge (ALJ). Id. at 14, 39, 40, 41). Plaintiff's request was granted and a hearing was held before ALJ William G. Horne. Id. at 14, 404-59. Plaintiff was represented by an attorney at the hearing, and testimony was taken from plaintiff and from a vocational expert. Id. at 14, 404-05.

On Apr. 4, 2008, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act, and denying her application. Id. 14-21. In the decision, the ALJ found that plaintiff has not performed substantial gainful activity since her alleged onset date and has an affective disorder which is "severe" within the meaning of the Act, but that her condition does not meet or equal the severity of any Listed impairment. Id. at 14-15.

The ALJ summarized and discussed the record evidence, plaintiff's testimony, and the medical opinions of record. (R.

---

separate exhibits. Compare (R. 1)(Ex. 1 A, "Payment Documents/Decisions;" Ex. 1 B, "Jurisdictional Documents/Notices;" and Ex. 1 D, "Non-Disability Development,") with (R. 63-94).

Contrary to the Commissioner's practice in this case, D. Kan. Rule 7.6(a)(4) requires that an index of the "separately labeled" exhibits attached to briefs or memoranda be provided to the court. The Commissioner may not avoid the stricture of the local rule merely by failing to separately identify the individual exhibits, and instead "separately labeling" as a single unit, an entire group of exhibits.

Nonetheless, the court has searched out the applicable documents and provided pinpoint citations herein.

15-19).  He gave "controlling weight to treating source opinions from Prairie Family Medicine and Dr. Penn," (R. 18), and found plaintiff's allegations of limiting symptoms "credible only to the extent of the findings herein."  Id. at 19.

The ALJ assessed plaintiff with the residual functional capacity (RFC) to perform no more than light work, limited to: standing and/or walking only two hours in a workday; alternating between sitting and standing at will; no lifting from floor level; as stress-free work as possible; performing only simple, routine, repetitive work with no complex tasks; and with minimal interaction with co-workers and the public.  Id.  Based upon the RFC assessed and the testimony of the vocational expert, the ALJ determined that plaintiff is not able to perform her past relevant work, but that she is able to perform other unskilled, light work existing in significant numbers in the economy, such as jobs as an office helper, photocopy machine operator, and electronic final inspector.  Therefore, he concluded that plaintiff is not disabled within the meaning of the Act, and denied her application.  Id. at 20.

Plaintiff disagreed with the decision, sought review, and filed a brief and two attachments containing medical records from Valeo Behavioral Health Care with the Appeals Council.  Id. at 10, 384-403.  The Appeals Council made plaintiff's brief and the two attachments a part of the administrative record, id. at 9,

-3-

but determined the information filed does not provide a basis to change the ALJ's decision, and denied review.  (R. 6-8). Therefore, the ALJ's decision is the final decision of the Commissioner.  Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of the decision.

## II.  Legal Standard

42 U.S.C. § 405(g) guides the court's review of a final decision by the Social Security Administration.  It provides that "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). The court must determine whether the Commissioner's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence

-4-

supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and

-5-

whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520.  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to apply the psychiatric review technique at step two and step three of the evaluation process and improperly weighed the medical opinions.  (Pl. Br. 24-30).  She claims substantial evidence does not support the credibility finding, and the ALJ's RFC finding is erroneous because it is not supported by the vocational expert's responses to the hypothetical questions presented.  Id. 31-35.  The

Commissioner admits that at steps two and three of the sequential process the ALJ did not express his application of the psychiatric review technique, but argues that any error in that regard is harmless.  (Comm'r Br. 14-15).  He argues that the ALJ properly weighed the medical opinion of plaintiff's treating source, that substantial evidence supports the ALJ's determination regarding the credibility of plaintiff's allegations, and that the vocational expert's testimony supports the ALJ's RFC finding.  Id. at 15-24.  The court will address each of plaintiff's allegations of error in the order it would be reached in applying the sequential evaluation process, beginning with the ALJ's application of the psychiatric review technique.

## III. Application of the Psychiatric Review Technique

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments.  20 C.F.R. § 404.1520a.  In evaluating the severity of mental impairments at steps two and three, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Id. § 404.1520a(c).  After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments.  Id. § 404.1520a(d).

-7-

When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairment(s) is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. § 404.1520a(d)(1).  If the mental impairment(s) is severe, the technique requires an evaluation of whether the impairment(s) meets or equals a listed impairment by comparing the step two findings and the medical evidence with the criteria of the Listings.  Id. § 404.1520a(d)(2).  If the Commissioner determines that plaintiff's mental impairment(s) does not meet or equal a listing, he will then assess plaintiff's RFC.  Id. § 404.1520a(d)(3).

As plaintiff argues, application of the technique is to be documented in the ALJ's decision.  Id. § 404.1520a(e).  "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas."  Id. § 404.1520a(e)(2).

The Commissioner admits the ALJ did not make express findings regarding the degree of plaintiff's functional

-8-

limitation in each of the four broad mental functional areas.
(Comm'r Br. 14).  However, the Commissioner notes that the ALJ
found plaintiff has a "severe" mental impairment of "affective
disorder," and that the ALJ found plaintiff's impairment does not
meet or equal a Listing.  <u>Id.</u>  The Commissioner asserts that the
RFC is "undoubtedly consistent with" the step two and three
findings, <u>id.,</u> and that any error in not making "express findings
at step two regarding the degree of functional limitation caused
by Plaintiff's mental impairments is harmless."  <u>Id.</u> at 15.

   Although the harmless error statute, 28 U.S.C. § 2111, is
not strictly applicable to judicial review of an administrative
decision, courts have applied harmless error analysis to cases in
which remand would be merely a waste of time and money.  <u>Kerner
v. Celebrezze</u>, 340 F.2d 736, 740 (2d Cir. 1965) (no reason the
rule should not be applied in judicial review of an
administrative decision).  The Tenth Circuit has specifically
applied it in Social Security disability cases, but not always by
name.  <u>See</u>, <u>Glass v. Shalala</u>, 43 F.3d 1392, 1396-97 (10th Cir.
1994)(improper ALJ conduct didn't require reversal because it did
not unfairly affect the ultimate result); <u>Gay v. Sullivan</u>, 986
F.2d 1336, 1341 n. 3 (10th Cir. 1993)(minor technical errors do
not undermine confidence in the determination of the case); <u>Diaz
v. Secretary of Health & Human Servs.</u>, 898 F.2d 774, 777 (10th
Cir. 1990)(effect of the error, if any, was minimal); <u>Bernal v.</u>

Bowen, 851 F.2d 297, 302 (10th Cir. 1988)(harmless error for ALJ rather than psychologist to fill out Psychiatric Review Technique Form (PRTF)); and, Arroyo v. Apfel, No. 99-4060, 1999 WL 1127656, *2 (10th Cir. Dec. 9, 1999) (Where there is substantial evidence in the record to support the ALJ's conclusion in the PRTF, failure to explicitly relate the evidence to the conclusion is harmless error.).  The Tenth Circuit has held that where there is substantial evidence to sustain the ALJ's decision despite an error, the error is harmless, and the court will not remand merely for a ministerial correction.  Wilson v. Sullivan, No. 90-5061, 1991 WL 35284, *2 (10th Cir. Feb. 28, 1991).

As the Arroyo opinion suggests, where substantial evidence in the record supports the ALJ's conclusions after applying the psychiatric review technique, failure to explicitly relate the evidence to the conclusions is harmless error.  However, in the circumstances presented here, the court finds that the record evidence is equivocal, the ALJ failed to weigh that contradictory evidence, and the court may not construct a post-hoc justification for the ALJ's application of the technique.

At step two, the ALJ found plaintiff has an affective disorder.[2]  (R. 14, 20).  He found that plaintiff's condition

---

[2]Both in the body of the decision and in the "Findings," the ALJ stated, "The second step of this process involves determining whether the objective medical evidence of record reflects that claimant has the following 'severe' impairment:  an affective disorder."  (R. 14, 20)(emphasis added).  Nowhere in the

does not meet or equal listing level severity.  (R. 14, 20).  In

summarizing the medical treatment evidence, the ALJ noted

plaintiff's long-standing history of depression, that plaintiff

was prescribed anti-depressant medications, that plaintiff

declined to participate in recommended counseling, that plaintiff

claimed she had periods of confusion after a motor vehicle

accident in 2005, that plaintiff's depression and anxiety were

poorly controlled, and that counseling and mental health

medication management were recommended.  Id. at 15-16(citing Exs.

1F, 6F (R. 150-55, 183-245)).  The ALJ also summarized a PRTF and

a "Residual Functional Capacity - Mental" form completed by state

agency psychologist, Dr. Adams.[3]  Id. at 16(citing Ex. 2F (R.

156-58)).  The ALJ noted Dr. Adams's conclusions regarding three

of the four broad mental functional areas:  that plaintiff was

mildly restricted in activities of daily living and moderately

---

decision, however, did the ALJ actually state his determination
whether the evidence reflects that plaintiff has a "severe"
affective disorder.  Because plaintiff does not allege error in
that step two finding, the court does not address the ambiguity.

   [3]The ALJ stated that Dr. Adams performed a "mental status
consultative evaluation," and provided a citation only to the
mental RFC form.  A review of the record reveals that Dr. Adams
is a nonexamining state agency psychologist who completed the
mental RFC form (Ex. 2F), a "Case Analysis" (Ex. 3F), and the
PRTF (Ex. 4F) for the state agency.  (R. 156-58, 159, 160-73).
There is no record that Dr. Adams was anything more than a state
agency psychologist who reviewed the record and completed these
forms at the "initial" determination level.  The ALJ did not cite
to the PRTF completed by Dr. Adams, but included information from
that form in his discussion of Dr. Adams's "mental status
consultative evaluation."  (R. 16).

limited in maintaining social functioning and in maintaining concentration, persistence, or pace.[4]  (R. 16).

The ALJ summarized the report of a mental status examination performed by Dr. Wilkinson.  Id. at 17(citing Ex. 10F (R. 283-85)).  He noted Dr. Wilkinson's assessment of "major depression, recurrent, mild; and GAF scale ratings ranging from 55 to 75, indicating moderate to transient symptoms."  Id.  Finally, the ALJ discussed a "Mental Impairment Questionnaire (RFC and Listings)" completed and signed by plaintiff's treating nurse-practitioner, Ms. Koch, and signed by Ms Koch's supervising physician at Valeo Behavioral Health Care.  Id. at 17-18(citing Ex. 14F (R. 296-301)(hereinafter "the Valeo report")).

The ALJ noted the Valeo report's findings regarding the four broad mental functional areas:  moderate restrictions in activities of daily living; marked difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.[5]  Id. at 18.  The ALJ completed his discussion by

---

[4]The ALJ did not mention it, but Dr. Adams also found plaintiff had no episodes of decompensation.  (R. 170).

[5]In finding no episodes of decompensation, the nurse-practitioner inserted, "that I am aware of."  (R. 301).

stating six reasons for discounting the Valeo report, and found the "report less persuasive."[6]  (R. 18).

The court's review of the decision reveals that the ALJ considered all of the record evidence necessary for application of the psychiatric review technique in determining the severity of plaintiff's mental impairment(s).  All of the evidence agrees that plaintiff has a "severe" affective disorder--major depressive disorder.  Id. at 160, 163, 285, 296.

However, the Valeo report reveals that plaintiff also has chronic Post-Traumatic Stress Disorder (PTSD).  Id. at 296.  Dr. Adams found a "severe" anxiety-related disorder.  Id. at 160, 165.  Dr. Wilkinson did not find additional mental impairments, but "Deferred" on making an Axis II diagnoses, and noted that the only record she had to review was a single "Symptom Summary" completed when plaintiff was 47 years old.  Id. at 284, 285.  The ALJ did not find that PTSD or anxiety-related disorder are not medically determinable mental impairment in the circumstances, but he did not find that plaintiff has these additional medically determinable impairments.  It might be argued that the ALJ rejected the Valeo report that plaintiff has chronic PTSD, but that does not account for the failure to accept Dr. Adams's opinion regarding anxiety-related disorder.  The ALJ did not

_____

[6]The ALJ did not specify what it was he found the Valeo report less persuasive than.

specifically discount Dr. Adams's opinion.  The court is not in a position to re-weigh the evidence.  White, 287 F.3d at 905.  It may not construct a post-hoc rationalization to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  Lacking a discussion in the decision, the court is unable to determine if the ALJ was even aware of the various opinions regarding these additional mental impairments.

The ALJ's determination regarding the four broad mental functional areas is no more helpful.  The ALJ reported the findings of each medical source regarding the broad mental functional areas, and stated that he found the Valeo report less persuasive.  However, he did not state whose findings he accepted, and he did not state his findings regarding the four areas.  Because the evidence is equivocal, the court cannot know the proper severity findings without weighing the evidence itself.  As previously noted, that is outside the court's jurisdiction in judicial review of an administrative decision.  Therefore, the court is unable to determine how the ALJ applied the psychiatric review technique in this case.

The Commissioner's argument that the ALJ's RFC assessment is consistent with his step two and step three findings does not establish that the failure to apply the psychiatric review

technique was harmless error.  As previously discussed, the ALJ's
failure to apply the technique leaves the court unable to discern
whether plaintiff has additional "severe" mental impairments or a
"severe" combination of mental impairments, and unable to
determine the ALJ's findings regarding the four broad mental
functional areas.  Therefore, without engaging in post-hoc
rationalization and its own weighing of the evidence, the court
is unable to determine whether the ALJ's step two and step three
findings are supported by substantial evidence in the record.
Consequently, even assuming the ALJ's RFC is consistent with the
step two and three findings, that consistency says nothing about
the propriety of the analysis.  If the step two and three
findings are not supported by substantial evidence, a consistent
RFC assessment is likely not supported by substantial evidence,
and the step two and three error cannot be considered harmless.
Remand is necessary for the Commissioner to apply the psychiatric
review technique as discussed herein and to perform his step two,
step three, and subsequent, analyses accordingly.

**IV.  Evaluation of Medical Opinions**

Plaintiff claims the ALJ erred in weighing the treating
source medical opinion in the Valeo report and in weighing the
nonexamining source opinion of Dr. Adams.  (Pl. Br. 28-30).
Specifically, plaintiff argues the ALJ committed reversible error
in failing to consider and discuss the Valeo medical records made

-15-

a part of the administrative record by the Appeals Council, that four reasons given to discount the Valeo report are not supported by substantial evidence in the record, that the ALJ failed to specify what less-than-controlling weight he assigned the Valeo report, and that the ALJ failed to evaluate and explain the weight given Dr. Adams's opinion. (Pl. Br. 28-30).

The Commissioner did not respond to plaintiff's argument regarding Dr. Adams's opinion, but argues that the ALJ properly discounted the Valeo report, and the ALJ's determination is supported by substantial evidence including the Valeo treatment records considered and made a part of the administrative record by the Appeals Council. (Comm'r Br. 16-19).

Both parties discussed the standard for evaluating medical opinions. Id. at 15; (Pl. Br. 26-27). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be weighed by the Commissioner in accordance with certain regulatory factors. Id. § 404.1527(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2008). A physician who has treated a patient frequently over an extended

period of time (a treating source) is expected to have greater
insight into the patient's medical condition.  Doyal v. Barnhart,
331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an
examining physician who only saw the claimant once [(a
nontreating source)] is not entitled to the sort of deferential
treatment accorded to a treating physician's opinion."  Id. at
763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).
However, opinions of nontreating sources are generally given more
weight than the opinions of non-examining sources who have merely
reviewed the medical record.  Robinson v. Barnhart, 366 F.3d
1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456,
1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407,
412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789
(7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955,
963 (3d Cir. 1984)).

　　　"If [the Commissioner] find[s] that a treating source's
opinion on the issue(s) of the nature and severity of [the
claimant's] impairment(s) [(1)] is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and
[(2)] is not inconsistent with the other substantial evidence in
[the] case record, [the Commissioner] will give it controlling
weight."  20 C.F.R. § 404.1527(d)(2); see also, SSR 96-2p, West's
Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2008).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record.  Id. (citing SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6),

416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211,

1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human

Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give

reasons in the decision for the weight he gives the treating

source opinion.  Id. 350 F.3d at 1301.

> When a treating physician's opinion is inconsistent
> with other medical evidence, the ALJ's task is to
> examine the other physicians' reports "to see if [they]
> 'outweigh[]' the treating physician's report, not the
> other way around."

Goatcher, 52 F.3d at 289-90(quoting Reyes v. Bowen, 845 F.2d 242,

245 (10th Cir. 1988)).  "Finally, if the ALJ rejects the opinion

completely, he must then give 'specific, legitimate reasons' for

doing so." Watkins, 350 F.3d at 1301(citing Miller v. Chater, 99

F.3d 972, 976 (10th Cir. 1996)(quoting Frey v. Bowen, 816 F.2d

508, 513 (10th Cir. 1987)).

The court first addresses plaintiff's claim that remand is

necessary because the ALJ failed to consider and discuss the

treatment records made a part of the administrative record by the

Appeals Council.  (Pl. Br. 28-29)(citing R. 396-403).[7]  Plaintiff

asserts that the records at issue were submitted to the hearings

office by facsimile on Aug. 31, 2007, and Feb. 18, 2008, and that

the records were received by the Office of Disability

---

[7]Although plaintiff only cites one set of the records at
issue, the court recognizes plaintiff's arguments relate to all
of the records (R. 387-403), and considers all of the records.

Adjudication and Review, but that they were not included in the claims folder at the administrative hearing.  (Pl. Br. 28). Plaintiff further asserts that her counsel made another copy of the records on the day before the hearing and delivered them to the hearing site, that the hand-delivered records were in the claims folder at the hearing, but that when plaintiff received the ALJ's decision, the records were not noted as exhibits.  Id. Plaintiff notes that the ALJ has a duty to develop the record even when plaintiff is represented by counsel, and concludes that, therefore, the ALJ's failure to consider and discuss the records at issue is an error requiring remand.  Id. at 28-29.

Plaintiff's argument is without merit.  The ALJ's failure to consider or discuss the medical records at issue was rendered moot by the Appeals Council's consideration of the records. Plaintiff's counsel included copies of the pertinent records as attachments to the brief which he submitted to the Appeals Council (R. 384), and the Council issued an order making those records a part of the administrative record.  (R. 9).  The Council specifically stated that it had considered "the additional evidence listed on the enclosed Order," (R. 6), and found "this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 7).

Because the records at issue were made a part of the administrative record by the Appeals Council, the court considers

-20-

them in its review of the Commissioner's decision.  O'Dell v.
Shalala, 44 F.3d 855, 859 (10th Cir. 1994).  Plaintiff has shown
no error in relation to consideration of these medical records.

The parties do not argue whether the Valeo report is a
treating source opinion.  Plaintiff calls it a treating source
opinion, but acknowledges that a nurse-practitioner completed and
signed the form which was also signed by the nurse-practitioner's
supervising physician.  (Pl. Br. 6, 17, 35)(citing R. 296-301).
The Commissioner calls it "the opinion of plaintiff's clinician
at Valeo," (Comm'r Br. 15, 16, 17), but does not provide any
argument that it is not a treating source opinion.

The court notes that a nurse-practitioner is not an
"acceptable medical source," but is an "other" medical source.
20 C.F.R. § 404.1513.  Her medical source opinion is not,
strictly speaking, a "medical opinion," and can never be entitled
to controlling weight.  20 C.F.R. §§ 404.1527(a)(2) & (d)(2).
However, recognizing the reality that an increasing number of
claimants have their medical care provided by health care
providers who are not "acceptable medical sources"--nurse-
practitioners, physician's assistants, social workers, and
therapists--the Commissioner promulgated SSR 06-3p.  West's Soc.
Sec. Reporting Serv., Rulings 327-34 (Supp. 2008).  In that
ruling, the Commissioner noted:

> With the growth of managed health care in recent years
> and the emphasis on containing medical costs, medical

> sources who are not "acceptable medical sources," such
> as nurse practitioners, physician assistants, and
> licensed clinical social workers, have increasingly
> assumed a greater percentage of the treatment and
> evaluation functions previously handled primarily by
> physicians and psychologists.  Opinions from these
> medical sources, who are not technically deemed
> "acceptable medical sources" under our rules, are
> important and should be evaluated on key issues such as
> impairment severity and functional effects, along with
> the other relevant evidence in the file.

Id., Rulings, 330-31.  SSR 06-3p explains that where a treating

source opinion is not given controlling weight, opinions of

nurse-practitioners will be evaluated using the regulatory

factors for weighing medical opinions.  Id. at 331-32(citing 20

C.F.R. § 404.1527).

Based upon the regulations and SSR 06-3p, one could argue

that the Valeo report is the opinion of Ms. Koch, a nurse-

practitioner, and is not a treating source opinion.  However, Ms.

Koch's supervising physician signed the Valeo report and thereby

adopted it as his own opinion.  As a physician, he is an

"acceptable medical source" and, under appropriate circumstances,

his opinion might be accorded "controlling weight" as a "treating

source" opinion.  20 C.F.R. § 404.1527.  Moreover, the ALJ noted

that the Valeo report was based upon "a treating relationship

with claimant," implying that he had evaluated it as a treating

source opinion and, nevertheless, found it "less persuasive."

(R. 18).  Because the opinion was adopted by the supervising

physician, because the ALJ impliedly evaluated it as a treating

source opinion, and because the Commissioner makes no specific argument otherwise, the court finds that the Valeo report is a treating source medical opinion.

The court identifies six reasons given for discounting the Valeo report:  (1) Plaintiff missed seven of thirteen mental health appointments, so her actual treatment visits have been relatively infrequent.  Id.  (2) The course of treatment "is inconsistent with someone who is truly disabled by a mental impairment."  Id.  (3) Other record evidence does not indicate plaintiff can only remember one of three items after three minutes, or that plaintiff is unable to drive, as alleged in the Valeo report.  Id.  (4) "The possibility exists that this opinion was expressed in an effort to assist claimant."  Id.  (5) The opinion "is inconsistent with other mental health records from the same facility."  Id.  And, (6) the opinion is inconsistent with other evidence of record.  Id.  Plaintiff claims the ALJ erred in reasons (1), (4), (5), and (6).  The court agrees.

With regard to reason (1), the ALJ stated that the Valeo "report indicated claimant had been seen on a monthly basis since July 19, 2005, but the evidence of record clearly shows she missed 7 of 13 scheduled mental health appointments during the period from July 7, 2005 through November 29, 2005."  (R. 18). The ALJ concluded that "the actual treatment visits have been relatively infrequent."  Id.  Plaintiff claims this is error

because the ALJ did not recognize that plaintiff rarely missed her medication appointments with Ms. Koch, and because individuals with mental impairments are more apt to miss appointments than non-impaired individuals.  (Pl. Br. 29-30).  The Commissioner did not address this point.

Accepting the ALJ's assertion that plaintiff missed seven of thirteen scheduled appointments in the five month period from July through November, 2005, that fact is not contrary to the Valeo report.  The report stated that plaintiff had been seen by Ms. Koch "approximately monthly" since July 19, 2005.  (R. 296).  Using the ALJ's figures, Ms. Koch saw plaintiff six times in the five months between July and November, 2005.  Clearly, Ms. Koch's report is correct, and the fact plaintiff missed appointments is no basis to discount the medical source's opinion.  There was no consideration given to whether missing the appointments was justified, whether the "missed" appointments were made up, or whether more contact was medically necessary.

It is appropriate to evaluate medical opinions based upon the length of the treatment relationship and the frequency of examination.  20 C.F.R. § 404.1527(d)(2)(i).  As the Valeo report indicates, Ms. Koch had seen plaintiff approximately monthly from July, 2005 through at least May, 2006.  The ALJ does not point to a contrary opinion from a medical source who had treated plaintiff longer or more frequently, and cites no authority for

-24-

the proposition that more frequent observation is necessary to form a medical opinion in the circumstances of this case.  Reason (1) is an insufficient basis to discount the Valeo report.

Plaintiff attacks reason (4), asserting it is error to discount a treating source opinion that might have been "expressed in an effort to assist claimant," when the ALJ points to no basis in the record evidence to support that finding.  (Pl. Br. 29)(citing Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004); McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002); Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  The Commissioner acknowledges this argument, but makes no attempt to distinguish the cases cited by plaintiff. (Comm'r Br. 16).

The court agrees with plaintiff.  The Tenth Circuit "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." McGoffin, 288 F.3d at 1253(citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987)). The "possibility" that a medical source might express an opinion to assist her patient constitutes even less reason to discount the source's opinion.  As plaintiff argues, an ALJ may not reject a treating source opinion based upon his own speculation. McGoffin, 288 F.3d at 1252.  Reason (4) is erroneous as a matter of law.

Plaintiff attacks reasons (5) and (6)--that the opinion is inconsistent with records from Valeo, and with other record evidence--by pointing out that the ALJ did not explicitly identify the inconsistent evidence. (Pl. Br. 28). The Commissioner argued that the ALJ "properly considered <u>all</u> of [the] medical evidence of record" and, "as discussed above, the ALJ properly found that the Valeo 'opinion evidence [was] inconsistent <u>with other mental health</u> records from the same facility, as well as <u>other evidence of record</u>.'" (Comm'r Br. 16)(citing (R. 17-18) and quoting (R. 18))(emphasis in Comm'r Br.).

The court's review of the decision does not reveal that the ALJ pointed to any inconsistencies between the Valeo report and the Valeo treatment records. Moreover, other than the ultimate finding of disability in the Valeo report, and Dr. Adams's finding that plaintiff was not disabled, the ALJ points to no fact in the record as a whole that is directly inconsistent with the Valeo report. Although the Commissioner's Brief asserts he had "discussed above" the propriety of the ALJ's finding that the Valeo report was inconsistent with the Valeo records or other record evidence, the court finds nowhere in his brief where the Commissioner points to the ALJ's showing of an inconsistency.

After stating that the ALJ properly found inconsistencies, the Commissioner purported to give additional evidentiary

examples supporting the ALJ's decision.  (Comm'r Br. 16-19).
Although the evidence cited by the Commissioner might be viewed,
at least in a general sense, as being consistent with the ALJ's
finding of non-disability, the Commissioner points to no
evidentiary fact in the Valeo treatment records or in the record
as a whole which is directly inconsistent with a statement of
fact (or directly controverts a statement of opinion) in the
Valeo report.  Therefore, the Commissioner has failed to
demonstrate that reasons (5) or (6) for discounting the Valeo
report are supported by substantial evidence in the record.

     Moreover, most of the facts cited in this regard by the
Commissioner's brief were not relied upon by the ALJ in his
decision.  An ALJ's decision should be evaluated based solely on
the reasons stated in the decision.  Robinson, 366 F.3d at 1084.
A decision cannot be affirmed on the basis of appellate counsel's
post hoc rationalizations for agency action.  Knipe v. Heckler,
755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may
not create post-hoc rationalizations to explain the
Commissioner's treatment of evidence when that treatment is not
apparent from the Commissioner's decision.  Grogan v. Barnhart,
399 F.3d 1257, 1263 (10th Cir. 2005).  Thus, reasons (5) and (6)
are not supported by substantial evidence, and provide
insufficient bases to discount the Valeo report.

Plaintiff next claims the ALJ erred by failing to specify what less-than-controlling weight he accorded the Valeo report. (Pl. Br. 30).  The Commissioner did not address this argument.

The ALJ gave "'controlling weight' to treating source opinions from Prairie Family Medicine and Dr. Penn."[8]  (R. 18). He stated he found the Valeo report "less persuasive."  Id.  Dr. Penn, with The Center for Manual Medicine, evaluated plaintiff at the request of Dr. Bruce, a physician with Prairie Family Medicine, and stated his opinion that plaintiff is suffering primarily from depression and movement anxiety, that she does not have any <u>physical</u> disabilities, and that she should stay consistent with her treatment at Valeo, and should pursue a pain management treatment program.  Id. at 16, 177-78.  Prairie Family Medicine transcribed Dr. Penn's letter into its treatment notes, verbatim.  Id. at 218-19.

Plaintiff does not object to the ALJ's finding that controlling weight should be given to the opinions of Dr. Penn and Prairie Family Medicine.  Therefore, it is controlling in this case (and likely <u>res judicata</u> on remand) that plaintiff did

---

[8]The court notes record evidence that Dr. Penn may be a chiropractor, not an "acceptable medical source," and his opinion may be that of an "other" medical source, and not worthy of "controlling weight."  (R. 177, 178)("Mark W. Penn, D.C."). Because the court is not certain that the abbreviation "D.C." always means "Doctor of Chiropractic," and because plaintiff does not make that argument, the court merely points out the ambiguity.

not have any <u>physical</u> disabilities, should have stayed consistent with mental health treatment, and should have pursued pain management.  However, that does not preclude acceptance of the Valeo report.  Each of these facts is consistent with a finding that plaintiff is disabled due to <u>mental</u> impairment(s).

With regard to the "opinion from Prairie Family Medicine," the decision is not so clear.  Prairie Family Medicine primarily handled plaintiff's physical impairments, but it also treated plaintiff for anxiety and depression.  (R. 183-245, 362-83).  In the decision, the ALJ summarized treatment notes from Prairie Family Medicine.  (R. 15-16).  A review of the Prairie Family Medicine treatment as summarized by the ALJ does not reveal any opinion which precludes acceptance of the Valeo report. Moreover, the Prairie Family Medicine notes acknowledge that plaintiff's treatment for depression was being managed by Valeo. (R. 190, 369).

Because according controlling weight to the opinions of Dr. Penn and Prairie Family Medicine does not preclude assigning weight to the opinions expressed in the Valeo report, it was necessary for the ALJ to explain what less-than-controlling weight he assigned to the Valeo report.  <u>Watkins</u>, 350 F.3d at 1301.  The ALJ stated he found the report less persuasive, but did not explain the particular weight he assigned to the report. (R. 18).  This is error requiring remand for an explanation.

-29-

Finally, plaintiff claims the ALJ failed to explain the weight given to the opinion of the state agency consultant, Dr. Adams.  (Pl. Br. 30).  Again, the Commissioner did not respond to plaintiff's claim.  As plaintiff claims, an ALJ must explain the weight given to the opinions of state agency consultants.  SSR 96-6p, West's Soc. Sec. Reporting Serv., Rulings 129-32 (Supp. 2008).  Here, the ALJ summarized Dr. Adams's opinion, but he did not explain the weight he accorded to it.  (R. 16).  This is legal error requiring remand for a proper evaluation of the medical opinions.

The court finds remand is necessary because of error in applying the psychiatric review technique and in weighing the medical opinions.  Therefore, the court need not evaluate whether the ALJ also erred in evaluating the credibility of plaintiff's allegations or in presenting his hypothetical question to the vocational expert.  Plaintiff may make these arguments on remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this

recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 30th day of March 2009, at Wichita, Kansas.


s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**